1
2
3
4
UNITED STATES DISTRICT COURT
5
DISTRICT OF NEVADA
6
* * *
7
WILLARD PATRICK WITHAM,                            Case No.2:21-CV-1632  JCM (BNW)
8
                              Plaintiff(s),
9                                                                     ORDER
        v.
10
PERI FORMWORK SYSTEMS, INC.,
11
                              Defendant(s).
12
13      Presently before the court is defendant PERI Formwork Systems, Inc. ("defendant")'s
14  motion for summary judgment.  (ECF No. 39).  Plaintiff Willard Patrick Witham ("plaintiff") filed
15  a response (ECF No. 45), to which defendant replied (ECF No. 48).
16  **I.      Background**
17      This is a negligence and products liability case arising from injuries sustained by plaintiff
18  at his place of employment.  Plaintiff was a carpenter employed by M.J. Dean Construction
19  ("Dean"), a subcontractor for a large-scale construction project in Las Vegas.  (ECF No. 1-1 at 4).
20  Defendant is a manufacturer and distributor that provided certain construction materials to Dean,
21
22  including a "formwork tower," which appears to be a type of scaffolding product.  (*Id.*).
23      On the date of the incident, a crane operator placed a ladder inside the formwork
24  scaffolding tower, propping the ladder up against one of the tower's side rails.  (*Id.*).  Plaintiff then
25  climbed the ladder and unhooked the rigging that had been used to hold the ladder in place.  (*Id.*).
26  As the crane began moving the rigging away, the rigging "hooked" onto a piece of the tower,
27  which subsequently tipped over with plaintiff still inside.  (*Id.*).  Plaintiff fell approximately twenty
28

feet, sustaining numerous injuries. (*Id.*).

Plaintiff alleges causes of action against defendant for strict products liability and negligence. (*Id.* at 5-8). Plaintiff's strict products liability claims are for manufacturing defect, design defect, and failure to warn. (*Id.* at 5–7). Defendant now moves for summary judgment on all causes of action.

## II.    Legal Standard

Federal Rule of Civil Procedure 56 allows summary judgment when the admissible evidence and affidavits on file show "no genuine dispute" over "any material fact," entitling the movant "to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment "isolate[s] and dispose[s] of factually unsupported claims . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the non-moving party must "set forth specific facts showing that there is a genuine issue for trial." *Id*.

In determining summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000). Moreover, "[i]n such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *Id*.

By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential

element of the non-moving party's case; or (2) by demonstrating that the non-moving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the non-moving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether a genuine dispute exists for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be

1    granted.  *See id.* at 249–50.

2         The Ninth Circuit has held that information contained in an inadmissible form may still be

3    considered for summary judgment if the information itself would be admissible at trial.  *Fraser v.*

4    *Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003) (citing *Block v. City of Los Angeles*, 253 F.3d 410,

5    418-19 (9th Cir. 2001)) ("[t]o survive summary judgment, a party does not necessarily have to

6    produce evidence in a form that would be admissible at trial, as long as the party satisfies the

7    requirements of Federal Rule of Civil Procedure 56.").

8

9    **III.    Discussion**

10         The court addresses defendant's motion for summary judgment on plaintiff's negligence

11   claim and strict liability claims in turn.

12

13         A.    Negligence

14         Defendant's first cause of action is for negligence, arguing that plaintiff (1) "alleges no

15   specific duty" owed to him, (2) that a defendant cannot breach a duty it does not owe, and (3) that

16   plaintiff has failed to show causation.  (ECF No. 39 at 9–10, 11).

17

18         In Nevada, the plaintiff has the burden of proving the elements of a negligence action.  *See*

19   *Joynt v. Cal. Hotel & Casino*, 835 P.2d 799, 801 (Nev. 1992).  These elements include: (1) a duty

20   owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; (3) said breach

21   as the legal or proximate cause of the plaintiff's injury; and (4) damages suffered by the plaintiff.

22   *Scialabba v. Brandise Const. Co., Inc.*, 921 P.2d 928, 968 (Nev. 1996).

23

24         "The question of . . . duty of care is a question of law."  *Sparks v. Alpha Tau Omega*

25   *Fraternity, Inc.*, 255 P.3d 238, 244 (Nev. 2011).  The moving party in a negligence case has the

26   burden of showing that an element determined as a matter of law is lacking.  *See Joynt*, 835 P.2d

27   at 801.

28

- 4 -

Nevada courts disfavor arguments that an actor may owe a "specific duty" to a plaintiff. *See Ashwood v. Clark County*, 930 P.2d 740, 743 (Nev. 1997) (declining to find that a landowner had a "specific duty" to keep a certain gate unlocked in case of an emergency), *see also Dakis v. Dakis*, 898 P.2d 116, 118 (Nev. 1995) (declining to consider or adopt a specific duty requiring weapon-owners "to safeguard weapons or warn visitors about them). Instead, any actor who engages in an "affirmative act" has a general duty of reasonable care to protect foreseeable plaintiffs from "unreasonable risk of harm." Restatement (Second) of Torts: Negligence § 302 cmt. a (Am. L. Inst. 1965). Further, Nevada courts have recognized that manufacturers owe a duty of care to the users of their products. *See White v. Ward*, 491 P.3d 755 (table) (Nev. App. 2021).

The issue of legal cause is an "issue[] of fact and not of law" because "[r]easonable minds often may differ as to whether a risk of harm reasonably should have been foreseen." *Merluzzi*, 610 P.2d at 742. Thus, causation "should . . . be submitted to the trier of fact" if any dispute exists. *Id*.

In the instant case, defendants rests its argument on plaintiff's failure to allege a "specific duty" owed to him by defendant. (ECF No. 39 at 9). However, defendant's conduct in supplying formwork to plaintiff's employer created a risk for plaintiff, and defendant is not required to allege a "specific duty" under Nevada law. (ECF No. 45 at 5); *see Ashwood*, 930 P.2d at 740

Moreover, Nevada law recognizes that defendant, as a manufacturer and supplier of a product used by plaintiff, owed plaintiff a duty of care. (ECF No. 39 at 9). Additionally, defendant failed to show its conduct fell within a no-duty rule. The court thus presumes that defendant owed plaintiff a general duty of care.

Next, defendant argues, unpersuasively, that it breached no duty to plaintiff because "in the absence of duty, there can be no breach." (ECF No. 39 at 9–10). This conditional argument

fails because it depends upon an absence of duty, which defendant failed to show.

Finally, defendant avers that plaintiff cannot show causation.  (*Id.* at 11).  Defendant rests its argument on plaintiff's testimony that plaintiff himself did not see the rigging catch onto the formwork tower at the moment of the incident.  (*Id.*).  However, the incident report refers to another employee on the work site who alleges he did in fact see the rigging catch.  (ECF No. 45 at 42).  These conflicting accounts create a dispute over legal cause, a question of fact best answered by a jury.

Defendant has failed to persuade the court that it did not breach a legal duty owed to plaintiff or to demonstrate an absence of dispute over causation as an issue of fact.  Accordingly, the court denies defendant's motion for summary judgment as to plaintiff's negligence claim.

B.  Strict product liability

Defendant next moves for summary judgment on plaintiff's cause of action for strict product liability, contending that plaintiff has provided no expert testimony to support his claim.

Nevada courts have "recognized three categories of strict tort liability claims: manufacturing defects, design defects, and failure to warn."  *Ford Motor Co. v. Trejo*, 402 P.3d 649, 653 (Nev. 2017).  All strict product liability cases require a plaintiff to demonstrate that "(1) the product had a defect which rendered it unreasonably dangerous, (2) the defect existed at the time the product left the manufacturer, and (3) the defect caused the plaintiff's injury."  *Rivera v. Philip Morris, Inc.*, 209 P.3d 275 (Nev. 2009).  Here, the court addresses each product liability claim and the arguments presented by the parties in those claims.

i.  *Manufacturing defect claims*

The "mere happening" of an accident that caused an injury cannot prove the existence of a product defect for a manufacturing defect claim.  *Michelin N. Am., Inc. v. Deal*, 381 P.3d 641

(table) (Nev. 2012).  "[M]ere evidence of a malfunction" is only evidence of a defect "*where other identifiable causes are absent*."  *Id.* (emphasis added).  Further, this "malfunction theory" does not "relieve [] the plaintiff of the burden of proving a defect."  *Id.*

In the instant case, defendant argues that plaintiff has failed to meet his burden of showing that the formwork in question was defective.  (ECF No. 39 at 12).  Plaintiff contends that the occurrence alone of his alleged accident proves a defect in the manufacturing and design of defendant's formwork was present.  (ECF No. 45 at 23).  Because the "mere happening" of an accident does not support a defect inference in a manufacturing defect case, plaintiff has failed to carry his burden of proving the existence of a manufacturing defect.

Having failed to establish the threshold element of his manufacturing defect case—the existence of a defect—plaintiff's strict product liability claim for manufacturing defect fails.

ii.    *Defective design claims*

In Nevada, the "consumer-expectation test" is used to show the requisite defect in a claim of defective design.  *Ford Motor Co.*, 402 P.3d at 650.  The consumer-expectation test provides that "a product is defectively designed if it fails to perform in the manner reasonably to be expected in light of its nature and intended function," specifying further that the product must be "more dangerous than would be contemplated by the ordinary user having the ordinary knowledge available in the community."  *Id.* at 652.

Evidence produced by an expert of a lack of "adequate safety features" or the availability of "a safer alternative design" that was "feasible at the time of manufacture" supports a defective design strict product liability claim.  *Fyssakis v. Knight Equip. Corp.*, 826 P.2d 570, 572 (Nev. 1992).  Summary judgment is "inappropriate" when a decision hinges on the level of ordinary knowledge on a certain topic in a certain community in the face of any dispute over this issue

1   because these are questions of fact for the factfinder to determine.  *See Rivera*, 209 P.3d at 273.

2          Even if a plaintiff successfully establishes the threshold element of a defective design

3   product liability claim by showing the existence of a design defect, the plaintiff must also prove

4   the other two elements of all product liability cases.  *See id.* at 275.  Thus, after showing a design

5   defect, a plaintiff must also show that the defect existed at the time the product left the

6   manufacturer and that the defect caused the plaintiff's injury.  *See id*.

7          Here, defendant reasons that plaintiff "must" provide "evidence that a product lacked

8   adequate safety features or that a safer alternative design was feasible at the time of manufacture"

9   to prevail in a defective design claim.  (ECF No. 39 at 13).  While evidence showing the lack of

10  safety features or a feasible alternative design *may* support a defective design claim, defendant

11  erred in suggesting that this is the only method of proving defective design.  (*Id.*) (emphasis added).

12  Plaintiff asserted and provided evidence, by way of expert testimony, that the formwork design

13  may have been more dangerous than reasonably expected by an ordinary user in light of its nature

14  and intended function.  (*Id.* at 24–26, 304–05).

15         However, while plaintiff may have shown enough evidence to reach the jury on the

16  threshold element of his defective design claim, he never asserted or provided evidence that a

17  potential defect existed at the time the product left defendant control.  Thus, plaintiff has failed to

18  meet his burden of establishing all the elements of his defective design product liability claim.

19                    *iii.    Failure to warn claims*

20         In addition to the three elements required in other strict product liability cases, a plaintiff

21  asserting a strict product liability claim based on failure to warn  must prove "that the inadequate

22  warning caused his injuries."  *Id.* at 274–75.  Because Nevada recognizes no presumption that a

23  plaintiff would have heeded a manufacturer's warnings, a plaintiff must show that he "would have

1    acted differently" had the manufacturer "provided additional information or warnings." *Id*. at 272–

2    73.

3           Defendant claims that plaintiff has failed to prove that defendant's lack of warning caused

4    his injuries, pointing out that plaintiff has not shown that he would have heeded any additional

5
     warnings provided by defendant.  (*Id*. at 13).  Plaintiff fails entirely to address his failure to warn

6
     claim or provide evidence to support it.  (*See* ECF No. 45).  Accordingly, his strict product liability

7

8    failure to warn claim fails.

9            Plaintiff has failed to provide evidence establishing all the elements of his manufacturing

10   defect, design defect, or failure to warn product liability claims.  The court grants summary

11
     judgment in favor of defendant as to plaintiff's product liability claims.

12

13   **IV.**    **Conclusion**

14          Accordingly,

15          IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant PERI

16
     Formwork Systems, Inc.'s motion for summary judgment (ECF No. 39) be, and the same hereby
17

18   is, GRANTED IN PART and DENIED IN PART.

19          DATED April 1, 2024.

20

21                     _____

22                     UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28